### CATHERINE S. HARRISON v. BARBARA HECKLER ET AL.

1. TRUSTEE'S INDIRECT PURCHASE AT HIS OWN SALE IS ONLY VOIDABLE.

The indirect purchase by a trustee at a sale made by him in his trust capacity, is voidable, but it cannot be set aside after the land has been conveyed to a *bona fide* purchaser without notice of the indirect purchase by the trustee.

2. RECORD OF DEEDS NOT CONSTRUCTIVE NOTICE TO NEW PURCHASER.

The record of the deed from the trustee to the nominal purchaser, and of a deed upon the same day and for the same consideration from such purchaser to the trustee, individually, is not alone such notice as will render the title of a *bona fide* purchaser invalid.

On Appeal from the Court of Common Pleas of Cuyahoga county.

UPSON, C. J.

This case comes into this court by appeal from the judgment of the court of common pleas. Frederick Salzburger died possessed of certain lands which were afterwards sold by Barbara Salzburger, his widow, and administratrix of his estate, under an order of the probate court of this county, to Frank H. Kelly, for $1,500, on September 12, 1864. On the same day, Frank H. Kelly conveyed these lands to Barbara Salzburger, the consideration stated in the deed being also $1,500. Afterwards, Mrs. Salzburger was married to John B. Heckler; and John B. Heckler and Barbara, his wife, on the 6th day of April, 1866, conveyed the same lands to Gustav Schmidt for a nominal consideration. Schmidt conveyed the lands to Heckler and wife by a quit-claim deed on the same date. Heckler and wife conveyed the lands to Lewis Fetterman on the 4th day of February, 1868, and, Fetterman and wife conveyed the same lands to Heinrich Barth on August 2, 1868, for the consideration of $3,000. The lands are now held by the widow and heirs at law of Heinrich Barth.

The action is brought for the purpose of setting aside all these conveyances and having the lands treated as assets of the estate of Frederick Salzberger, and resold by his personal representatives. As to the fact that the lands were sold to Frank H. Kelly, really for the purpose of conveying them to Barbara Salzburger, the testimony leaves but very little doubt, and we find that to be the fact. That Heinrich Barth, the last purchaser of the lands, had notice of any of these equities, or of the fact that the lands were thus bought indirectly by Barbara Salzburger, we do not think the testimony is sufficient to warrant us in finding, nor does the record of the deeds give implied notice of the fraud. The case then stands before us to be decided upon this point: It is claimed on behalf of the plaintiff that such a conveyance as that made to Barbara Salzburger is not only in law voidable, but is absolutely void, and therefore none of the subsequent conveyances are valid; that although Heinrich Barth was a *bona fide* purchaser of the property without notice, yet the conveyance to him is also void and should be set aside by this court as void.

The terms "void" and "voidable" have been used very incorrectly in a great many decisions of courts of justice. The word "void" is very frequently used where the word "voidable" should be used, and where it means simply that the conveyance or contract, whichever it may be, can be treated as void by the party injured. This is well stated in Pomeroy's Eq. J., sec. 915, relating to fraudulent conveyances, and the same rule applies in this case. This in law would be re-

garded as a fraudulent conveyance, where it is procured in that way by a trustee for his own benefit.

"There are certain incidents which are requisite to the exercise of the jurisdiction, and to the granting of any relief, and which result partly from the equitable conception of fraud itself, in its effects upon the rights and liabilities of the two parties, and partly from the theory concerning remedies and their administration. These incidental requisites are referable, therefore, to the two following general principles: First, fraud does not render contracts and other transactions absolutely void, but merely voidable, so that they may be either confirmed or repudiated by the party who had suffered wrong. Secondly, if he elects to repudiate, and to seek for a remedy, then equity proceeds upon the theory that the fraudulent transaction is a nullity; and it administers relief by putting the parties back into their original position, as though the transaction had not taken place, and by doing equity to the defendant as well as to the plaintiff. The consequences of these two principles, which have been alluded to, and which remain to be considered, are as follows:"

Then sec. 918: "The remedy which equity gives to the defrauded person, is most extensive. It reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice. A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenham's language, from his children and his children's children, or, as elsewhere said, from any person amongst whom he may have parceled out the fruits of his fraud. There is one limitation. If the property which was acquired by the fraud, has come by transfer into the hands of a *bona fide* purchaser for a valuable consideration and without notice, even though his immediate grantor or assignor was the fraudulent party himself, the hands of the court are stayed, and the remedy of the defrauded party, with respect to the property itself, is gone; his only relief must be personal against those who committed the fraud."

The case of Michoud v. Girod, 4 How. (U. S.) 503, is cited as a case directly to the contrary of the doctrine which I have read from Pomeroy's Eq. J. In that case it was held that,

"A purchase by an executor, through a third person, of property of the testator, is fraudulent and void, though the sale was at public auction judicially ordered, and the result of the evidence is that a fair price was paid."

But the controversy was between the original parties and their heirs.

The principle is recognized very clearly, although it was not necessary to the decision of the case, in an opinion given by Judge Ranney, in Sheldon's Lessee v. Newton, 3 O. S. 507, in this language:

"A very salutary principle of law was certainly invaded when the administrator indirectly purchased at his own sale. While the property remained in his hands, or in the hands of any purchaser from him with notice, the sale could have been set aside in chancery, at the election of the heirs, and the property again put up."

This is in support of the principle to which we first referred, that a sale of that kind is not absolutely void, but merely voidable, because, as Judge Ranney says, it may be set aside at the election of the heirs. If it were absolutely void, it would need no election to set it aside. And again, it recognizes the principle that such a sale cannot be set aside when the property has gone into the hands of a *bona fide* purchaser without notice.

The decision of the case depending upon these principles of law, the judgment will be in favor of the defendants.

Garfield & Garfield, for plaintiffs.

Gustav Laubscher, for defendants.